JOHNSON, Chief Judge
(specially concurring) .
In concurring in the resultant effect of the holding in the majority opinion in this case, requiring the father to contribute to the support of his minor children, I think it important to point out that this being a case of first impression in this state, as found by the trial court, this case should not be held out as a desirable model of procedure because of the peculiar set of facts involved here.
The record is before us only on an agreed statement of facts which leaves this court, and probably the lower court, somewhat in the dark as to the actual procedures followed in the children being returned to their mother, the petitioner in this case. When the divorce was granted in 1960, the custody of the children, four in number at that time, was awarded to the mother. In 1962, the circuit court took the children from the mother and gave custody to the father. Why this was done the *459 record does not show, but we can reasonably assume that some unfitness of the mother existed in order for the change of custody to be made.
When the children were permanently committed by the Juvenile Court of Duval County, Florida, on January 11, 1965, to the Florida Methodist Children Home, pursuant to the provisions of Chapter 39, Florida Statutes, F.S.A., said Home was, and still is, a licensed child placing agency. One of the four children was placed for adoption and therefore is not involved in this proceeding. The record indicates that the mother, petitioner herein initiated proceedings and was given custody of the three remaining children on December 22, 1968, and referred to a letter from the Florida Methodist Children’s Home “attached,” but said letter is not attached and we are at a loss as to by what authority said Home granted custody of the children to the mother, and whether or not the father was given an opportunity to oppose the same. Admittedly the father lost his rights to the children or notice of proceedings in adoptions when the Juvenile Court permanently placed them in the Home, but by the same token the mother lost her rights, too. She had been declared unfit by a competent court and therefore, I do not believe it was within the contemplation of F.S. Chapter 39, F.S.A. that the placing agency could circumvent a court order in this manner. I think before the reciprocal support enforcement act should apply there should be some explanation of why the change of custody was made. It is apparent in this case that the father is of limited financial means and therefore there is an unsurmountable financial obstacle to him going to California to ascertain the welfare of the children, whether the support money he may be directed to pay is actually spent on the children, and most important of all, whether the mother has now become a fit person to have the custody after having been once found to be unfit by the court.
I reiterate, I think the father should support the children to the best of his ability, but I think a showing should be required of the petitioner as to how she obtained custody of the children and a showing of her fitness to have such custody. This appears to me to be only fair to both parties and is demanded by equity and the welfare of the children.
Therefore, I don’t think the majority decision in this case should be considered as establishing the law to be followed in future cases. I don’t think the Home had any legal authority to dispose of its custody of the children except when placed out for adoption as provided by law.
The support by the father should be required pending further proceedings, as a legal requirement of a parent under the law, but not because of the petition filed in this case.